# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

BETTY CAMPBELL,

_____PLAINTIFF,

vs.                                              CASE NO. CV 09-J-1937-NE

UNITED STATES OF AMERICA,

      DEFENDANT.

## **MEMORANDUM OPINION**

Pending before the court is the defendant's motion for summary judgment (doc. 23), a memorandum (doc. 24), and evidence (doc. 25) in support of said motion, to which the plaintiff filed a memorandum and evidence in opposition (doc. 26).[1] Having considered the motion, response, evidence and the relevant law, the court finds as follows:

## **FACTUAL BACKGROUND**

This action is brought against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), which provides the exclusive remedy for tort actions against the United States, to the extent that the FTCA waives sovereign immunity. 28 U.S.C. § 2679(a); *Dalehite v. United States*, 346 U.S. 15, 30-31, 73

---

[1]The court finds that the filing of a reply by the defendant is unnecessary for the resolution of this case.

S.Ct. 956, 97 L.Ed. 1427 (1953).  The FTCA allows recovery against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

Viewing the evidence before the court in the light most favorable to the plaintiff, the relevant facts of this case are as follows:

The plaintiff was injured in an on-the-job accident on July 2, 2007, when she slipped and fell on water accumulated on the floor of Building 4708 at Redstone Arsenal, which is owned, controlled and managed by the defendant, more specifically, by NASA.[2]  Plaintiff depo. at 8-10.  She suffered severe breaks of her arm, requiring surgery.  *See* Operative Report of 7/2/2007, submitted as attachment to plaintiff deposition.  Plaintiff is employed by non-party Boeing Company, which is a government contractor for NASA and which leases office space from defendant in Building 4708.  Plaintiff depo. at 8; Corn depo. at 10, 21, 33.  Boeing previously settled the plaintiff's Alabama worker's compensation claim.

---

[2]The parties and witnesses also refer to this as Marshall Flight Space Center, which is within Redstone Arsenal. See e.g., depo. of Timothy Corn, at 7.  Marshall Flight Space Center is comprised of approximately 240 buildings, totaling 4 million square feet, and employs about 7,000 civil servants and contractors.  *Id*., at 9.

The plaintiff fell in Room 115-B of Building 4708, which was used as a break room. Plaintiff depo. at 10-11. The room was unoccupied on the date in question and her fall was unwitnessed. *Id.* at 13, 18. Prior to her fall, the plaintiff was unaware of any issues with water on the floor of that room and had never noticed any water stains on the tile in that room. *Id.* at 13-14, 23, 25. The plaintiff had no knowledge of how long the water had been on the floor prior to her fall. *Id.* at 27, 44.

A co-employee, Leslie Gawon, heard that the plaintiff fell and went to that room, where she saw plaintiff on the ground and water in the size of a large turkey platter on the floor. Gawon depo. at 16-17. Jocelyn Dee Mitchell, another co-employee, saw the plaintiff was laying in water and also saw another puddle right before the plaintiff. Mitchell depo. at 12, 17. Mitchell cleaned up puddle behind the plaintiff before the paramedics arrived. Mitchell depo. at 16. The puddle she cleaned was the size of a large pizza. Mitchell depo. at 16. After the paramedics left, Gawon cleaned up the puddle she saw with paper towels. Gawon depo. at 18.

The plaintiff seeks tort damages on the theory that her injuries resulted from defendant's negligent care and/or maintenance of the buildings occupied by her employer.[3] Specifically, plaintiff asserts her injuries were the direct result of defendant's failure to repair the roof of the building where she worked and failure to

---

[3]The plaintiff had a wantonness claim as well, which was dismissed by prior order.

provide adequate lighting.  Plaintiff memorandum, at ¶¶ 3, 17, 22, 25, 26.

Boeing shares the building space with NASA employees, some NASA civil servants, and some UAH contractors.  Plaintiff depo. at 27-28; Seymour depo. at 31.  All maintenance issues were handled by EG&G, a third-party contractor.  Plaintiff depo. at 28.  Wanda Seymour serves as their maintenance contact person.[4]  *Id*., at 28.

The plaintiff has nothing to show that the defendant knew about water on the floor prior to her fall.  Plaintiff depo. at 44.  Although she had not seen water on the floor of Room 115-B prior to her fall, there were ongoing problems with leaks from rain in other parts of the building.  Plaintiff depo. at 13-15, 29; *see also* Seymour depo. at 21, 27.  However, there were not consistent leaks in any one area because as the leaks were called in, they were repaired.  Seymour depo. at 64, 69; Corn depo. at 39-40.  The plaintiff first noticed evidence of leaks in the room where she fell six to eight months after the date she fell.  Plaintiff depo. at 31-32.

After the plaintiff fell, Seymour received a call that an employee had fallen in Room 115.  Seymour depo. at 37.  Charlie Conway with Boeing and David Guy with NASA Industrial Safety lifted ceiling tiles looking for a leak.  *Id*. at 41.  There was

---

[4]Ms. Seymour testified that she is employed by Yang Enterprises, a subcontractor of Center Operations Support at the Marshall Flight Center.  Seymour depo. at 7-8.  Yang is a subcontractor of EG&G, which is a division of URS Corporation.  *Id.* at 9.  EG&G performs under two separate contracts with NASA, one for maintenance and the other for operations support.  *Id.* at 9, 20.  Her office is located in Building 4708.  *Id.* at 11.

no visible sign of water and no source for that water was ever determined. *Id*. at 39-41, 73. They checked walls for moisture and dampness too, but found nothing that was wet. *Id*. at 74. Gawon looked around the room after plaintiff fell, but saw no source for the water. Gawon depo. at 19, 24. Historically, no leaks were reported in the area where plaintiff fell. Seymour depo. at 77; Gawon depo. at 24.

The defendant relies on building managers and occupants to report leaks because they cannot inspect every square foot after every rain. Corn depo. at 44. A new roof was put on the building in 2008. Seymour depo. at 15, 24-25. The defendant owns the building and paid for repairs, including the roof. Seymour depo. at 15; Corn depo. at 24. The majority of the leaks from rain were "occasional," and on the second floor of the building, with a "couple areas that we would have a problem with when it rained." Seymour depo. at 29-30, 69; Corn depo. at 47. *See also* Gawon depo. at 9. The leaks were random and not concentrated in any area. Gawon depo. at 12.

When Seymour reported leaks, EG&G would flag it as an emergency and send someone right away so no water would be sitting on the floor. Seymour depo. at 43. Seymour never had any water reported and never saw any water on the floor where plaintiff fell. *Id*. at 70. Seymour knows of no one else who has fallen on water in Building 4708. *Id*. at 42. Phillip Pettie, another Boeing employee, knows of no one

else who has slipped in water in Building 4708.  Pettie depo. at 31.  Similarly, Mitchell had no knowledge of anyone else who had slipped or fallen in water in Building 4708.  Mitchell depo. at 19.  Pettie did know the filing cabinets in a second floor room in the general area above the room where plaintiff fell had to be covered to keep them from getting wet sometime around when plaintiff fell.  Pettie depo. at 46-48.

The plaintiff also asserts that the light in Room 115-B "had blown," but the room was not dark because the light was on in Room 115-A.  Plaintiff depo. at 18.  However, the plaintiff did not try to turn on the light switch, and does not know if the light would have come on had she attempted to do so.  *Id*. at 18-20.  One of the two light fixtures in the room was actually working, and there was sufficient light for her to see the garbage can.  Plaintiff depo. at 19-21. *See also* Seymour depo. at 40-41, 75-76.  Seymour knows a light was out in the room because she had called in a work order for it the previous week.  Seymour depo. at 74.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal

element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element *essential to that party's case sufficient to sustain a jury verdict.* See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact. *Cordoba v.*

*Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## III.  LEGAL ANALYSIS

*1.  The Alabama Worker's Compensation Act:*

The defendant argues that the Alabama Worker's Compensation Act precludes an action for damages against the defendant, relying wholly on *Kirby v. Tennessee Valley Authority*, 877 F.Supp.578 (N.D.Ala.1994).  The plaintiff responds that she is asserting a "simple premises liability claim for the Defendant's failure to keep their (sic) leased office space in a reasonable condition."  Plaintiff's memorandum, at 6. Having considered the arguments of the parties and the relevant law, the court is of the opinion that the plaintiff's claim is not barred by §25-5-11, *Alabama Code 1975, as amended*.  The relevant portion of that section specifies:

> If a party, other than the employer ... is a governmental agency providing occupational safety and health services ... the injured employee ... may bring an action against  ... the governmental agency ... only for willful conduct which results in or proximately causes the injury or death.

Ala.Code 1975 § 25-5-11(a).  The court finds that the government, under the specific facts of this case, was not providing "occupational safety and health services" to the employees of non-party Boeing, and this case is thus distinguishable from *Kirby*.  As such, the plaintiff's claim is not precluded by the Alabama Worker's Compensation Act.

8

*2. Plaintiff's Premise Liability Claim:*

The plaintiff argues this is a simple case of premise liability. She asserts the defendant failed to provide adequate lighting and negligently permitted rainwater to leak from the roof of its building and create the puddle in which the plaintiff slipped. The defendant responds that it had no actual or constructive knowledge of water on the floor in Room 115-B prior to the plaintiff's fall, although it concedes it did have notice of periodic leaks in different parts of Building 4708 following rains. Defendant memorandum, at 12.

"In [a] premises-liability case, the elements of negligence 'are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages.'" *Lingefelt v. International Paper Co.,* 2010 WL 2797404, 2 (Ala.Civ.App.2010)(quoting *Sessions v. Nonnenmann*, 842 So.2d 649, 651 (Ala. 2002) (quoting *Ex parte Harold L. Martin Distrib. Co.*, 769 So.2d 313, 314 (Ala. 2000), quoting in turn other authorities)). "Proximate cause is an essential element of ...negligence claims .... Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Lingefelt*, 2010 WL 2797404, 2 (quoting *Martin v. Arnold*, 643 So.2d 564, 567 (Ala.1994)).

Under Alabama law, the duty owed by the landowner to one injured on its premises depends upon the status of the injured party in relation to the premises. *Raspilair v. Bruno's Food Stores, Inc*., 514 So.2d 1022, 1023 (Ala.1987); *Hickey v. Charlton*, 335 So.2d 389 (Ala.1976).   An employee of a tenant is considered an invitee of the landowner. *Latham v. Aronov Realty Co.*, 435 So.2d 209, 210 (Ala. 1983); citing *Coggin v. Starke Bros. Realty Co., Inc.*, 391 So.2d 111, 112 (Ala.1980); *Mudd v. Gray*, 200 Ala. 92, 75 So. 468 (1917). "A landowner owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Yeilding v. Riley*, 705 So.2d at 426, 429 (Ala.Civ.App.1997)(quoting *Hambright v. First Baptist Church-Eastwood*, 638 So.2d 865, 868 (Ala.1994)).   This duty includes the duty to warn the invitee of danger of which the invitor knows or ought to know, and of which the invitee does not know. *Jones Food Co. v. Shipman*, 981 So.2d 355, 361 (Ala.2006) (other citations omitted). Actual or constructive notice of the dangerous condition must be proven before an invitor can be held responsible for the injury. *Cash v. Winn-Dixie Montgomery, Inc*., 418 So.2d 874 (Ala.1982).

Taking as true that the roof of the building was leaking, and that water would leak in after a rain, there is no evidence that this puddle was, in fact, caused by the

10

leaky roof. The evidence tends to prove the opposite, that this was not a puddle causing by incoming rainwater. No one found wet ceiling tiles, wet walls, or any source for the water. There is no evidence from which an inference could be drawn that defendant had prior notice of water on the break room floor, or that defendant was negligent in not knowing the condition of the premises that caused plaintiff's injury. Thus, even given that the building roof leaked, there is no evidence that such was the proximate cause of the plaintiff's injury. Also lacking is any allegation that the defendant knew or should have known that water would, could, or did accumulate in that particular spot in the floor.

The plaintiff has not produced any evidence that the defendant knew, or should have known, of the existence of the puddle in the break room. Plaintiff could not show how the puddle got to the floor of the break room, or how long the puddle had been there. There was no evidence that the puddle had been on the break room floor a sufficient amount of time for defendant, or its contracted maintenance service, to be aware of it. There was no testimony or other evidence of knowledge on the part of defendant of any dangerous condition or defect on the break room floor that was brought to its attention prior to plaintiff's fall. *See Raspilair v. Bruno's Food Stores, Inc.,* 514 So.2d 1022, 1024 (Ala.1987). In other words, proximate cause is lacking.

The defendant has a duty to exercise reasonable care in maintaining its

premises as used by the plaintiff-invitee, and to keep those premises in a reasonably safe condition. Yet the invitor is not the insurer of the safety of its invitees. *Shaw v. Lipscomb*, 380 So.2d 812 (Ala.1980); *Foodtown Stores, Inc. v. Patterson*, 282 Ala. 477, 213 So.2d 211 (1968); *S. H. Kress & Co. v. Thompson*, 267 Ala. 566, 103 So.2d 171 (1957).

If an occupant's premises are in a dangerous condition, the occupant has the duty to give sufficient warning, so that, by the use of ordinary care, his invitees may avoid the danger. *Edwards v. Hammond,* 510 So.2d 234, 236 (Ala.1987); *Lamson & Sessions Bolt Co. v. McCarty*, 234 Ala. 60, 173 So. 388 (1937).  Accordingly, an invitor is not liable for injuries to an invitee that are caused by a danger known to the invitee or by one that should have been observed by the invitee in the exercise of reasonable care. *Quillen v. Quillen*, 388 So.2d 985 (Ala.1980).  The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.  *Hale v. Kroger Ltd. Partnership I,* 28 So.3d 772, 779 (Ala.Civ.App.2009).

Taking as true that the building leaked when there was rain, and taking as true the defendant knew or should have known of this propensity for leaks when there was rain, the plaintiff has failed to provide any evidence that any such leak caused the

puddle in which the plaintiff fell.  Rather, water could originate from a condensate line or a spill by a coworker, especially in a break room.  Corn depo. at 31-32.

The plaintiff suffers the same lack of proximate cause from her lack of lighting argument.  She does not assert that the room was too poorly lit to see, or that the lack of lighting contributed to her injuries.  The evidence clearly establishes a light bulb had burned out, but there was other lighting in the room and in the hallway and the adjacent room.  The plaintiff offers no evidence tending to establish that, had that one bulb been working, it would have changed the lighting in the room sufficiently that she would have noticed the puddle of water on the floor.  She does not address the light bulb in her brief in response to the motion for summary judgment, other than to mention it was out, nor even speculate to its effect in her deposition.

## CONCLUSION

Having considered the foregoing, the court is of the opinion that no genuine issues of material fact remain and defendant is entitled to judgment in its favor as a matter of law.  The defendant's motion for summary judgment on the sole remaining count of the complaint shall be so granted by separate order.

**DONE** and **ORDERED** this the 5th day of August, 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE